# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

RODERICK SIMS,

    Plaintiff,

  v.

CITY OF COLUMBUS, OHIO, et al.,

    Defendants.

Case No. 2:12-cv-308
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of am motion for judgment on the pleadings (ECF No. 8) filed by Defendant Central Ohio Workforce Investment Corporation, a memorandum in opposition (ECF No. 18) filed by Plaintiff, and a reply memorandum (ECF No. 19) filed by Central Ohio Workforce Investment Corporation. Also before the Court is a motion for leave to file an amended complaint (ECF No. 22) filed by Plaintiff and a memorandum in opposition (ECF No. 25) filed by Central Ohio Workforce Investment Corporation. For the following reasons, the Court **GRANTS** the motion for leave to file an amended complaint (ECF No. 22) and **DENIES** the motion for judgment on the pleadings (ECF No. 8).

### I. Background

Plaintiff, Roderick Sims, is an African-American male who in April 2011 was using the resources of Defendant Central Ohio Workforce Investment Corporation ("COWIC"). COWIC is a corporation that provides services to assist the unemployed with finding jobs. According to the complaint, COWIC contracts with the City of Columbus or its police department to have Columbus police officers provide security services to COWIC. One such officer assigned to this

special duty was Defendant Christopher O'Neall.

According to Plaintiff, he was waiting to receive copies of his resume at COWIC on April 8, 2011, when he was approached by O'Neall. The officer purportedly shone his flashlight into Plaintiff's face. After receiving his copies, Plaintiff asked O'Neall why he had done that. O'Neall allegedly responded that he could do anything he wanted to do. Plaintiff then stated that he had not done anything, that he was just waiting on his copies, that he had the right to file a complaint with O'Neall's supervisor, and that he was leaving the premises.

Plaintiff claims that O'Neall grabbed him and threw him across the floor, scattering his belongings. In doing so, Plaintiff alleges, O'Neall lost his balance and fell onto his back. As O'Neall rose, Plaintiff again stated that he had not done anything and that he was leaving. O'Neall allegedly started pushing Plaintiff through the reception area, through the door, and down the staircase from the second-floor COWIC offices. O'Neall had his hand on his holstered gun as they proceeded down the stairs. As they reached the first floor door, O'Neall proceeded to tell Plaintiff that he was going to make sure that Plaintiff went to jail and allegedly referred to Plaintiff using a racial epithet. The officer had difficulty in handcuffing Plaintiff because Plaintiff was wearing a cuffed silver bracelet on one wrist. While Plaintiff repeatedly stated that he had not done anything, O'Neall ordered Plaintiff onto the ground, allegedly drew his gun and jumped on Plaintiff's chest, and handcuffed Plaintiff. O'Neall then purportedly tasered Plaintiff in each of his legs. Plaintiff was then placed in a police vehicle.

O'Neall approached Plaintiff while he was in the vehicle and asked Plaintiff whether Plaintiff had AIDS. When Plaintiff indicated that he did not, O'Neall allegedly grabbed Plaintiff from the car and placed him into an emergency medical services truck where Plaintiff's pants

2

were removed and he was photographed. An unidentified police officer purportedly told Plaintiff not to look at him "or he would fuck plaintiff up some more." (ECF No. 2 ¶ 32.) Plaintiff was transported to jail, where he remained until April 10, 2011. He was charged with criminal trespass and resisting arrest. Both charges were later terminated in Plaintiff's favor, although the complaint does not provide details of what transpired.

Proceeding *pro se*, Plaintiff subsequently filed the instant action on April 9, 2012. His complaint asserts various federal and state claims against the City of Columbus, O'Neall, and O'Neall's supervisor, as well as a single claim under 42 U.S.C. § 1983 against COWIC. (ECF No. 2 ¶¶ 48-69.) COWIC filed a motion for judgment on the pleadings on that claim, and the parties have completed briefing on the motion. Plaintiff has also filed a motion for leave to file an amended complaint, and the period of briefing on that motion has ended. Consequently, both motions are ripe for disposition.

## II. Discussion

COWIC seeks dismissal under Federal Rule of Civil Procedure 12(c), which requires that this Court review the motion in the same manner that the Court would review a motion made under Rule 12(b)(6). *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). In order to determine whether Plaintiff has asserted claims upon which this Court can grant relief, the Court must construe Plaintiff's pleading in his favor, accept the factual allegations contained in his pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

In light of the foregoing standard, the Court finds COWIC's motion for judgment on the pleadings not well taken. COWIC seeks judgment on the grounds that the Court cannot grant relief on Plaintiff's 42 U.S.C. § 1983 claim against it. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
> . . . .

42 U.S.C. § 1983. Thus, in order to prevail on Count Four, Plaintiff must show that, while acting under color of state law, COWIC deprived him of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

The premise of Plaintiff's Count Four § 1983 claim is that COWIC acted with the City of

4

Columbus to allow O'Neall to provide security at COWIC and to taser Plaintiff. (ECF No. 2 ¶ 58.) Plaintiff also claims that "COWIC refused to intervene, prevent or assist in any manner whatsoever to stop the attack upon plaintiff." (*Id.*) COWIC characterizes this claim as essentially a failure to intervene claim, but construed in Plaintiff's favor, the claim reads more broadly than that characterization.[1] The claim language can also be read to encompass O'Neall's alleged insufficient training and alleged lack of fitness for his position. In other words, Plaintiff faults COWIC for having an unfit individual with insufficient training serve as its security, in addition to claiming that COWIC should have intervened to halt O'Neall's actions toward Plaintiff. Liberally construed as the product of *pro se* pleading, the claim perhaps also seeks to impose liability on COWIC for such things as failure to train, unlawful detention, false arrest, and excessive force.

Whatever the full scope of the claim against it, COWIC's core argument for judgment is simple: Because COWIC owed Plaintiff no duty, it cannot be held liable for its failure to call 911 or to prevent his arrest. COWIC then devotes its memorandum in support and its reply memorandum to explaining that why no special relationship existed between it and Plaintiff that would create a duty to act.

The underlying problem with COWIC's Rule 12(c) briefing is that it does not address, or

---

[1] The Court recognizes the grounds for COWIC's reasonable characterization of the pleading, but given the wording of the *pro se* complaint, the Court is hesitant to agree with COWIC's assertion that "Plaintiff's Amended Complaint makes clear that Plaintiff's claim is simply that COWIC owed him a duty of protection." (ECF No. 25, at 3 n.1.) This Court recognizes the tension between giving Plaintiff's complaint the mandated liberal construction afforded *pro se* filings and the risk of giving a *pro se* party an excessive benefit of the doubt. Plaintiff should not benefit improperly from vague pleading, but the Court must also guard against unduly penalizing him for being less clear than counsel likely would have been.

at best does not address effectively, a key issue that the § 1983 claim inescapably demands this Court consider. This issue is whether COWIC is essentially a state actor in this context so that the actions of its security officer flow to COWIC and create potential liability. Similarly, the underlying problem with Plaintiff's briefing is that he essentially responds only to COWIC's arguments and characterization of his claim (e.g., he dubiously attempts to argue that his status as a registered user of COWIC's services creates a special relationship entitling him to protection). The end result is that no one addresses with any specificity the central issues in their Rule 12(c) briefing.

COWIC directs this Court to that portion of Plaintiff's pleading that indicates that O'Neall is employed by the Columbus Police Department and was acting under color of law and within the scope of his employment. (ECF No. 2 ¶ 5.) Thus, COWIC reasons, Plaintiff has failed to plead that O'Neall was its employee. COWIC presents this argument to target the narrow duty of protection characterization of the § 1983 claim. Even construing the claim more broadly would not necessarily lead to a plausible claim.

If COWIC is a private entity and not akin to a state actor, it cannot be held liable under § 1983. This is because a plaintiff may not proceed under § 1983 against a private party if the private party did not act under color of law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Only in its briefing on Plaintiff's motion for leave to file an amended complaint does COWIC attempt to refute each theory under which Plaintiff might conceivably create liability. If any one of these theories applies here, then Plaintiff has pled a plausible claim and COWIC is not entitled to judgment. Given this fact, the Court need only discuss one theory for liability here, the symbiotic relationship or nexus test.

The nexus test "requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). The Sixth Circuit has previously explained the contours of the test as follows:

> Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.' " [*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)]. The cases establish no clear standard for identifying a "sufficiently close nexus." Rather, the Supreme Court reminds us that "readily applicable formulae may not be fashioned" for finding state action in civil rights cases; such a finding "can be determined only in the framework of the peculiar facts or circumstances present." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *see also* [*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)] (calling the state action determination a "necessarily fact-bound inquiry").

*Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). COWIC argues that the alleged facts here preclude application of the nexus test.

Treating COWIC's more fully realized motion to amend briefing as informing its motion for judgment on the pleadings–a perhaps questionable course of action by this Court that can only help COWIC–the Court finds COWIC arguing that the facts do not present a sufficiently close nexus so that COWIC falls within § 1983. Although Plaintiff indeed pled that O'Neall is an employee of the police department, he also pled that COWIC "had contracted with either the City of Columbus, Ohio or the Columbus Police Department to receive security services" and that Columbus therefore assigned officers to special duty at COWIC's place of business. (ECF No. 2 ¶ 58.) Such pleading undercuts COWIC's contention that "Plaintiff has provided no evidence of any connection between COWIC and the state, beyond that the state donates money

to COWIC."[2] (ECF No. 25, at 9.) Liberally construed as a *pro se* pleading, the complaint also raises a reasonable inference that the relationship between COWIC and the police department sufficiently imbues COWIC with some control over and therefore responsibility for the actions of its security officers.

The Court reaches this conclusion based in large part on *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003) (en banc). In that case, a customer who had been suspected of shoplifting sued the department store alleging that her civil rights has been violated when she was stopped by the store's security officer and subjected to a strip search. The store's security officer was an off-duty sheriff's deputy who while working at the store wore his sheriff's department uniform, his badge, and his sidearm. *Id.* at 834. When the security officer stopped the plaintiff-customer, he did not identify himself as a police officer, did not threaten to make an arrest, and did not waive his badge or weapon. *Id.* at 835. Applying the nexus test, the court of appeals held that a reasonable person could conclude that the officer's conduct was fairly attributable to the state. The Sixth Circuit specifically noted that the store policy mandated police intervention in strip search situations and that if the customer did not feel free to leave as a result of the security officer's sheriff's uniform, badge, and weapon, there could be said to have been a tacit arrest attributable to the state. Given the extant genuine issue of material fact, the court of appeals reversed, concluding that the customer might be able to show that the department store, through its security officer, deprived the customer of her federal rights.

---

[2] This Court notes that the first part of COWIC's statement regarding no other connection applies equally to both the original complaint and the proposed amended complaint. The money aspect of the statement targets only allegations set forth in Plaintiff's proposed amended complaint.

Here, while O'Neall was providing security for COWIC under a contract, he not only carried his sidearm, but drew it, as well as using his taser on Plaintiff more than once. He also handcuffed and arrested Plaintiff. It is unclear whether O'Neall was wearing his police officer uniform and badge. The presence of his equipment might suggest such a reasonable inference. Although issues of control remain unanswered–Plaintiff's *pro se* pleading does not fully define the relationship between COWIC and the police department, or the relationship between COWIC and O'Neall–a reasonable inference is that COWIC paid either the department to provide O'Neall or paid O'Neall directly to provide security, with COWIC likely exercising some degree of control. Questions over the degree of control and when or even if O'Neall stopped functioning as security and began to function as only a police officer are inappropriate for disposition in under these circumstances. *Cf. Kossler v. Crisanti*, No. 2:03cv679, 2005 WL 6789455, at *5 (W.D. Pa. Aug. 1, 2005) (declining to grant summary judgment for private entity on the grounds that there was a lack of state action when a genuine issue of material fact existed regarding the role of a police officer working off-duty providing security for the private entity bar).

Not unlike the security officer in *Chapman*, O'Neall's conduct on behalf of the private entity for which he was providing security can be said to amount to action attributable to the state, which in turn could present a sufficiently close nexus between the state and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the state itself. In other words, necessarily construing all reasonable inferences in Plaintiff's favor, the Court cannot say that Plaintiff has failed to present a plausible claim, even if he has pled less artfully than he might have.

9

COWIC is therefore not entitled to judgment on the pleadings. Having concluded that the nexus test precludes judgment at this juncture on Plaintiff's § 1983 claim against COWIC, this Court need not discuss the alternative theories debated by the parties.

The denial of COWIC's motion moots the contingent request to file an amended complaint that Plaintiff included in his memorandum in opposition. This Court notes, however, that the request was improper. COWIC filed its motion to dismiss on June 27, 2012. (ECF No. 8.) At that point, Plaintiff could have filed an amended complaint without having to obtain leave of Court at any time within 21-days of service of that motion. *See* Fed. R. Civ. P. 15(a)(1)(b). Instead of filing an amended complaint, however, the *pro se* Plaintiff filed his memorandum in opposition to the motion to dismiss in which he stated that if the Court were to find his complaint deficient in regard to COWIC, the Court should allow him to amend his pleading. (ECF No. 18.)

Courts have routinely recognized that such a generic, contingent request is insufficient to obtain leave to amend. For example, the Sixth Circuit has explained:

> Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects. 2–8 James Wm. Moore, *Moore's Fed. Practice*, § 8.10[2] (3d ed.). But if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice. *See PR Diamonds, Inc.*, 364 F.3d at 699; *Begala v. PNC Bank, Ohio*, 214 F.3d 776, 783–84 (6th Cir. 2000). CNH did not file a motion to amend its complaint, and the district court thus acted within its discretion in dismissing CNH's intentional misrepresentation claim with prejudice.

*CNH Am. LLC v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011). This Court has previously followed the court of appeals' rationale in rejecting throwaway requests for amendment related to motion to dismiss:

> Plaintiffs' general request for leave to amend their Complaint, in the alternative to their request that this Court deny PCNA's motion [to dismiss], is nothing more than an attempt to use the Court's decision as an advisory opinion enabling them to cure any deficiencies in their Complaint. *See id.* Plaintiffs have failed to follow the proper procedure for submitting a motion to amend their Complaint; thus, this Court "will not accept [Plaintiffs'] alternative argument contained in a response to a motion to dismiss as a proper motion to amend." *Techdisposal.com, Inc.*, 2009 WL 4283090, at *4. The Court **DENIES** Plaintiffs' request for leave to amend their Complaint.

*In re Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 WL 2953651, at *71 (S.D. Ohio July 19, 2012). Other courts have applied the same rationale:

> At the conclusion of their amended memorandum in opposition (Doc. 62), the plaintiffs summarily request leave to amend their complaint in the event this Court determined dismissal was appropriate. In view of the fact that the plaintiffs have failed to articulate what additional facts they would allege in a Second Amended Verified Consolidated Complaint, the request is denied. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) ("*Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.") (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis in original).

*In re Goodyear Tire & Rubber Co. Derivative Litig.*, Nos. 5:03CV2180, 5:03CV2204, 5:03CV2374, 5:03CV2468, 5:03CV2469, 2007 WL 43557, at *11 (N.D. Ohio Jan. 5, 2007). *See also In re Ferro Corp.*, Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358, at *20 (N.D. Ohio June 11, 2007) (denying request for leave to amend that was made in the conclusion paragraph of their memorandum in opposition); *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 904-05 (N.D. Ohio 2006) ("In addition, Plaintiffs' two-sentence request for leave to amend their Amended Complaint, which was made in the conclusion paragraph of their opposition, is DENIED for the reasons set forth in *PR Diamonds, Inc. v. Chandler*, 364 F.3d at 698-700 (noting that the plaintiffs, who failed to file a proper motion for leave to amend, were

11

not entitled to an advisory opinion of the complaint and then an opportunity to cure the deficiencies)."); *U.S. ex rel. Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 551 (S.D. Ohio 1997) ("An open request for the Court to permit amendment to cure deficiencies, once the Court identifies those deficiencies, will not defeat a meritorious motion to dismiss pursuant to Rule 12(b)(6).").

In addition to his imbedded contingent request to amend his pleading, Plaintiff has also pursued the more proper course of filing the aforementioned separate motion for leave to file an amended complaint. (ECF No. 22.) Federal Rule of Civil Procedure 15 governs such a motion. That rule provides that when a party cannot amend his or her pleading as a matter of course, the "party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule also states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This latter provision is relevant here because COWIC opposes amendment.

In determining whether amendment is appropriate, a court must determine whether considerations of undue delay, lack of notice to the opposing party, bad faith by the party seeking to amend, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment outweigh the liberal policy favoring amendment. *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 667 (6th Cir. 2012). There is no allegation of undue delay, lack of notice, bad faith, or undue prejudice here. Rather, COWIC argues that amendment would be improper because Plaintiff's proffered complaint fails to cure his pleading deficiencies and, because the proffered complaint would also be subject to dismissal, amendment would be futile. This Court disagrees.

12

As noted, the premise of Plaintiff's Count Four § 1983 claim in his original complaint is that COWIC acted with the City of Columbus to allow an insufficiently trained O'Neall to violate his rights. (ECF No. 2 ¶ 57-59.) In his proposed amended complaint, Plaintiff repeats this § 1983 claim (renumbered as Count Five) and also asserts a claim against COWIC in Count Nine for "race discrimination while receiving federal funding." (ECF No. 22-1 ¶¶ 63-65, 75-78.) As discussed above, the § 1983 claim survives a Rule 12 challenge, which disposes of COWIC's failure-to-cure argument. This leaves the race discrimination claim that Plaintiff seeks to add. Plaintiff does not identify the federal statute under which he seeks to assert this claim, but the Court recognizes that it is likely § 1983 again. Although Plaintiff again incorrectly focuses on federal funding in this claim, the crux of the claim is clear; Plaintiff asserts that his civil rights were violated by a state actor due to his being an African-American. Although the proposed amended complaint is hardly a model pleading, the Court cannot say that the pleading could not survive a motion to dismiss. This Court will permit amendment.[3]

---

[3] The amended complaint also adds a claim against O'Neall for malicious prosecution. (ECF No. 22-1 ¶¶ 60-62.) No party has filed in opposition to adding this claim to this litigation.

13

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for leave to file an amended complaint (ECF No. 22) and **DENIES** the motion for judgment on the pleadings (ECF No. 8). The Clerk shall detach the First Amended Complaint from the motion to amend and file the pleading on the docket. (ECF No. 22-1.)

**IT IS SO ORDERED**.

                                                /s/ Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE