UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RODERICK SIMS,**

    **Plaintiff,**

    v.

**CITY OF COLUMBUS, OHIO, et al.,**

    **Defendants.**

    Case No. 2:12-cv-308
    JUDGE GREGORY L. FROST
    Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment (ECF No. 38) and a memorandum in support (ECF No. 39) filed by Plaintiff, Roderick Sims; a memorandum in opposition (ECF No. 43) filed by Defendant Central Ohio Workforce Investment Corporation; and a memorandum in opposition (ECF No. 46) filed by Defendants the City of Columbus and Christopher O'Neall;

(2) a motion for summary judgment (ECF No. 41) filed by Defendant Central Ohio Workforce Investment Corporation; and

(3) a motion for summary judgment (ECF No. 44) filed by Defendants the City of Columbus, Christopher O'Neall, and Timothy Peters.

For the following reasons, the Court **DENIES** the motion for summary judgment (ECF No. 38) filed by Plaintiff and **GRANTS** the motions for summary judgment (ECF Nos. 41,44) filed by Defendants in regard to Plaintiff's federal claims.  This Court dismisses Plaintiff's state law claims without prejudice.

### I.  Background

Defendant Central Ohio Workforce Investment Corporation ("COWIC") is a corporation

that provides services to assist the unemployed with finding jobs. The Columbus Police Department provides police officers for security services to COWIC. One such officer assigned to this special duty was Defendant Christopher O'Neall, who was working on April 8, 2011, when the events underlying this lawsuit occurred. On that day, Plaintiff, Roderick Sims, an African-American male, was using the copying machine when O'Neall approached him. After O'Neall asked Plaintiff to leave the facility, a series of events described below culminated in O'Neall employing his Taser on Plaintiff and Plaintiff being arrested and charged with criminal trespass and resisting arrest. Both charges were later terminated in Plaintiff's favor.

Proceeding *pro se*, Plaintiff subsequently filed the instant action on April 9, 2012. In a ten-count amended complaint, he asserts various federal and state claims against the City of Columbus, Officer O'Neall, and Sergeant Timothy Peters (O'Neall's supervisor), as well as a claim under 42 U.S.C. § 1983 against COWIC. (ECF No. 2 ¶¶ 48-69.) All of the parties have filed motions for summary judgment, which are ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

#### 1. *Federal claims*

Many of the claims in Plaintiff's *pro se* amended complaint appear to fall under 42 U.S.C. § 1983: a *Monell* claim against Columbus (Count One), an "unlawful search and seizure" claim against O'Neall that encompasses false arrest (Count Two), an excessive force claim against O'Neall (Count Three), a claim against COWIC (Count Five), a "1983 conspiracy" claim against Peters (Count Six), and a "race discrimination while receiving federal funding" claim against Columbus and COWIC (Count Nine).[1] Section 1983 provides:

---

[1] Plaintiff pleads state law claims in Counts Four (malicious prosecution), Seven (intentional infliction of emotional distress), and Eight (assault and battery). Although the Court addresses these claims *infra*, two comments regarding the non-federal Counts are warranted.

First, this Court notes that Defendants Columbus, O'Neall, and Peters incorrectly state in their briefing that Plaintiff's Count Four malicious prosecution claim falls under § 1983. Such a claim can indeed fall under § 1983, but malicious prosecution is also a distinct tort claim under

3

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, in order to prevail on his § 1983 claims, Plaintiff must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

The crux of Plaintiff's § 1983 claims is that while he was allegedly peacefully and lawfully utilizing COWIC's resources, O'Neall attacked and arrested him. Although Plaintiff has filed an affidavit in which he makes conclusory statements regarding the general circumstances of the incident involved, these generalizations fail to present an issue of material fact. The only actual evidence presenting detailed facts are from Defendants, and this evidence presents quite a different picture. This is an important distinction in the parties' summary judgment motions that pervades all of the federal claims at issue. Stated most simply: Plaintiff provides *only* broad conclusions and no actual details, while Defendants provide evidence that fills in the details and entitles them to summary judgment. There is a dearth of evidence to support any of Plaintiff's theories under § 1983.

---

Ohio law. A fair reading of the amended pleading and Plaintiff's own characterization of the claim in his motion for summary judgment briefing provide that the malicious prosecution claim here is only under Ohio law. *See* ECF No. 27 ¶¶ 60-62; ECF No. 39, at Page ID # 273. The Court has therefore treated the claim as under state law, despite Defendants' broader understanding of the pleading.

Second, Count Ten is a "claim" for indemnification, which is not a claim for relief under federal or state law.

Review of the evidence indicates that O'Neall approached Plaintiff after the COWIC facility had closed. The officer asked Plaintiff to cease using the copying machine and to exit the offices. Plaintiff refused and became angry after O'Neall shined his flashlight in Plaintiff's face, purportedly to get Plaintiff to pay attention to him. When a yelling Plaintiff reached into one of his duffel bags, O'Neall grabbed Plaintiff by the arm. O'Neall asserts in his affidavit that he was concerned that the agitated Plaintiff might have been retrieving a weapon and that O'Neall simply wanted to control the situation and escort Plaintiff from the building. When Plaintiff pulled away, both men fell to the floor. O'Neall then informed Plaintiff that he was under arrest. When Plaintiff continued to pull away from O'Neall, the officer attempted to escort Plaintiff down the stairs and from the facility. Plaintiff pulled away and went down the stairs, exiting the building. Once outside, O'Neall attempted to control Plaintiff, but Plaintiff continued to resist O'Neall's attempts to grab his hands and handcuff Plaintiff, as well as O'Neall's attempt to take Plaintiff to the ground. When Plaintiff variously assumed a boxer's stance and appeared to be ready to flee, O'Neall deployed his Taser on Plaintiff's calf, taking Plaintiff to the ground, at which point O'Neall was able to apply the Taser to Plaintiff's upper back and subdue Plaintiff. These events may be unfortunate, but they are not excessive. And because they are not unreasonable, O'Neall is entitled to summary judgment based on the doctrine of qualified immunity.

Qualified immunity operates under certain circumstances to shield from civil liability governmental officials, such as police officers, who are performing official duties. *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003). The affirmative defense is meant to safeguard an official's proper decision-making process and offers that party potential relief from frivolous

suits. *See D'Agastino v. Warren*, 75 F. App'x 990, 993 (6th Cir. 2003). It "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified immunity may entitle the official not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted. In addressing the potential applicability of qualified immunity, courts therefore traditionally followed a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation. Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)); *see also Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). This analytic approach has at times also been characterized by various appellate panels as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights?

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). *See also Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (restating test); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established

statutory or constitutional rights of which a reasonable officer would have known."). Other appellate panels have found the third step to be redundant, at least in excessive force cases. *Kijowski v. City of Niles,* 372 F. App'x 595, 598 n.7 (6th Cir. 2010). Regardless of this latter point, courts are now permitted to depart from the sequential analysis and address either prong of the two-part qualified immunity inquiry first. *Williams v. Ingham*, 373 F. App'x 542, 547 (6th Cir. 2010); *Kijowski,* 372 F. App'x at 598.

It is also important to note that the doctrine of qualified immunity recognizes that an official can be found to have violated the constitution, but still be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing the particular conduct involved. The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiffs] to show that [the defendant is] not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). There is no dispute here as to whether Plaintiff remained on the COWIC premises after it closed, whether Plaintiff ignored O'Neall's requests to leave, whether Plaintiff became agitated and resisted O'Neall's attempts to resolve the situation without incident, and whether O'Neall reasonably believed that he and the COWIC workers might have been at risk given the uncertainty as to whether Plaintiff had a weapon. Plaintiff's conclusory affidavit

conveniently talks around these core issues. Consequently, even if O'Neall erred in his handling of the incident, it was an understandable error in light of the uncertainties that pervaded the situation so that no reasonable juror could conclude based on these facts that O'Neall's actions were objectively unreasonable. In other words, qualified immunity applies.

The doctrine also extends to the Plaintiff's arrest because either probable cause to arrest Plaintiff existed or O'Neall was objectively reasonable in thinking it did. For probable cause to arrest to exist, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). Put simply, "[a] police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (internal quotation and citations omitted). Furthermore, an arrest based upon probable cause where the suspect is later found to be innocent will not meet the criteria for a § 1983 action. *See Criss*, 867 F.2d at 262 (citing *United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.), *cert. denied*, 469 U.S. 867 (1984).

Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on " 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.' " *Crockett*, 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). "Probable cause does not require the same type of specific

8

evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). The existence of probable cause is a jury question, unless there is only one reasonable determination that is possible. *Crockett*, 316 F.3d at 581; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Only one reasonable determination is possible here. Plaintiff remained in the COWIC facility after hours and without privilege to do so, which engendered the criminal trespass charge, and he resisted arrest, which led to the resisting arrest charge. But even if there was lack of probable cause to support these charges, O'Neall would still be entitled to qualified immunity.

The Sixth Circuit has long recognized that "[i]t is well established that any arrest without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citing *Crockett*, 316 F.3d at 580). Thus, a lack of probable cause to arrest Plaintiff would mean that a constitutional violation had occurred; there is no dispute that at the time of the incident at issue, the right to be free from an arrest without probable cause was a clearly established right of which a reasonable person would have known. *See Beck v. Ohio*, 379 U.S. 89, 90-91 (1964) (recognizing that an arrest without probable cause violates the Fourth Amendment); *Parsons*, 533 F.3d at 504 (same). This leaves only the third part of the qualified immunity inquiry: whether Plaintiff has alleged sufficient evidence to indicate that what O'Neall did was objectively unreasonable in light of the clearly established constitutional rights involved.

If Plaintiff's arrest were indeed a reasonable mistake on the part of O'Neall, the officer is entitled to qualified immunity. *See Saucier*, 533 U.S. at 206. The Sixth Circuit has explained that "probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir.

1993).  Thus, "under § 1983, 'an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.' " *Parsons*, 533 F.3d at 501 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)).  Because a reasonable officer in O'Neall's position could have believed that he had probable cause to arrest, this Court must conclude that O'Neall remains entitled to qualified immunity.  *See Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (finding that qualified immunity existed where a reasonable officer could have believed in action taken by defendant officers that proved to be erroneous).

      The Court again notes that "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendant is] not entitled to qualified immunity." *Wegener*, 933 F.2d at 392; *see also Russo*, 953 F.2d at 1043.  Plaintiff has failed to present evidence contesting the fundamental facts upon which O'Neall relies.  Based on the evidence before this Court, Plaintiff has failed to demonstrate that O'Neall is not entitled to qualified immunity on the claim for false arrest and the claims related to effectuating Plaintiff's arrest.  O'Neall is therefore entitled to summary judgment on Counts Two and Three.

      This leads into the only other § 1983 count against an individual, the Count Six conspiracy claim against Peters.  There is absolutely no evidence before this Court suggesting in any way that any such conspiracy existed.  Rather, the only evidence before this Court indicates that Peters investigated the incident, found the use of force O'Neall employed to be justified, and completed a report on the matter.  There is no evidence that he believed the report of O'Neall was false, that a racial animus was involved, or that he participated in the filing of baseless

charges. Given the dearth of contrary evidence, all that remains to be said about this claim is that Peters is entitled to summary judgment on Count Six.

Two § 1983 claims remain against Columbus. In Count One, Plaintiff asserts a *Monell* claim against the City, and in Count Nine, he asserts a claim for "race discrimination while receiving federal funding" against Columbus and COWIC. The Sixth Circuit has explained that "[t]he question of whether a municipality is liable under § 1983 has two parts: '(1) whether [the] plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible of that violation.' " *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 449 (6th Cir. 2011). Thus, in addition to the fact that Plaintiff has wholly failed to point to any requisite policy or custom needed to create municipality liability, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 694 (1978), Counts One and Nine fail for want of a predicate violation. As a general proposition, where an underlying claim against an officer fails, the *Monell* claim against that officer's employer necessarily fails as well. *Lee*, 432 F. App'x at 450 (holding that because a jury found that an officer had not engaged in excessive force, the jury was prohibited from considering the *Monell* claim against the municipality). Because the underlying claims against O'Neall and Peters fails as discussed above, the Counts One and Nine claims therefore fail as well. *See Henderson v. Reyda*, 192 F. App'x 392, 398 (6th Cir. 2006) (holding that the dismissal of underlying claims against an officer compelled the failure of the *Monell* claims against the county employer).

This same rationale that entitles Columbus to summary judgment also pertains to COWIC, assuming only for the sake of the analysis that the latter private entity qualifies as a state actor here. Plaintiff has failed to point to any COWIC policy or custom behind O'Neall's

11

actions, and as already discussed the predicate claims fail.

COWIC does dispute that it qualifies as a governmental actor, a requisite condition for § 1983 liability, and it is this contention that COWIC also uses to attack Count Five. The premise of that claim is that COWIC acted with Columbus to allow an improperly trained O'Neall to provide security at COWIC and to taser Plaintiff. Plaintiff also claims that COWIC violated § 1983 by failing to intervene or prevent the encounter with O'Neall. Again liberally construing the claim here, as in the prior motion to dismiss context, the Court credits Plaintiff with seeking to impose liability on COWIC for such things as failure to train, unlawful detention, false arrest, and excessive force.

COWIC argues that it is entitled to summary judgment because it is a private entity and not a state actor subject to potential liability under § 1983. If COWIC is a private entity and not akin to a state actor, it cannot be held liable under § 1983. This is because a plaintiff may not proceed under § 1983 against a private party if the private party did not act under color of law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

Three tests exist for determining whether a private entity should be regarded as a state actor under § 1983. Under the first test, the public function test, "the court generally conducts an historical analysis to determine whether the private party has engaged in actions traditionally reserved to the state." *Id.* at 593. The Sixth Circuit has explained that where, as here, a plaintiff fails to provide any historical argument or analysis, " 'this failure alone renders this test inapplicable.' " *Id.* (quoting *Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995)). Additionally, "the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state

action." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (en banc).

The second test, the state compulsion test, also fails to support Plaintiff's claim. This test "requires 'proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly to take a particular action so that the choice is really that of the state.' " *Dubuc v. Green Oak Twp.*, 482 F. App'x 128, 132 (6th Cir. 2012) (quoting *Am. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004)). Similar to the first test, however, where a plaintiff has failed to introduce evidence that the state encouraged or coerced the private entity to undertake the action complained of, the plaintiff has failed to satisfy the test. *Id.* Plaintiff has failed to introduce any such evidence here.

Although the nexus test is perhaps most readily applicable to this case, Plaintiff has also failed to satisfy this third test. That test "requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Ellison*, 48 F.3d at 195. The Sixth Circuit has explained the contours of the test as follows:

> Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.' " [*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)]. The cases establish no clear standard for identifying a "sufficiently close nexus." Rather, the Supreme Court reminds us that "readily applicable formulae may not be fashioned" for finding state action in civil rights cases; such a finding "can be determined only in the framework of the peculiar facts or circumstances present." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *see also* [*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)] (calling the state action determination a "necessarily fact-bound inquiry").

*Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). Plaintiff has failed to satisfy this test for two reasons.

First, Plaintiff's failure to point this Court to any evidence to support the elements of this test by itself defeats his claim. *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 563 (6th Cir. 2010). Second, now that the factual allegations of the pleading have fallen away from this analysis and actual evidence is required, it is apparent that the potential liability predicated on *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003) (en banc), and relevant to the prior motion to dismiss decision is inapplicable in this summary judgment context.

In *Chapman*, a customer who had been suspected of shoplifting sued the department store alleging that her civil rights had been violated when she was stopped by the store's security officer and subjected to a strip search. The store's security officer was an off-duty sheriff's deputy who while working at the store wore his sheriff's department uniform, his badge, and his sidearm. *Id.* at 834. When the security officer stopped the plaintiff-customer, he did not identify himself as a police officer, did not threaten to make an arrest, and did not waive his badge or weapon. *Id.* at 835. Applying the nexus test, the court of appeals held that, in light of a factual dispute, a reasonable person could conclude that the officer's conduct was fairly attributable to the state. The Sixth Circuit specifically noted that the store policy mandated police intervention in strip search situations and that if the customer did not feel free to leave as a result of the security officer's sheriff's uniform, badge, and weapon, there could be said to have been a tacit arrest attributable to the state. Given the extant genuine issue of material fact, the court of appeals reversed, concluding that the customer might be able to show that the department store, through its security officer, deprived the customer of her federal rights.

Here, while O'Neall was providing security at COWIC, he not only carried his sidearm, but drew it, as well as using his taser on Plaintiff more than once. He also handcuffed and

14

arrested Plaintiff. O'Neall was wearing his police officer uniform and badge and not only threatened but arrested Plaintiff. Plaintiff has failed to point to any evidence suggesting that any COWIC employee, custom, or policy controlled, directed, or influenced O'Neall, while COWIC has presented this Court with ample evidence that O'Neall was acting as a police officer following the training and policies of his department.

Unlike the security officer in *Chapman*, O'Neall's actions here were not governed by a private entity's policy or custom. O'Neall's conduct thus cannot be said to amount to action attributable to the state. There is no sufficiently close nexus between the state and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the state itself. In other words, necessarily construing all reasonable inferences in Plaintiff's favor, the Court cannot say that Plaintiff has introduced a question of material fact as to whether he has satisfied the nexus test.

The underlying claims failed and no reasonable juror could conclude that COWIC was a state actor under the facts before this Court. Accordingly, COWIC is also entitled to summary judgment on Count Five.

### 2. State law claims

In his amended complaint, Plaintiffs pleads state law claims against O'Neall for malicious prosecution (Count Four), intentional infliction of emotional distress (Count Seven), and assault and battery (Count Eight). In light of the failure of Plaintiff's federal claims, this Court presumptively should not address these state law claims. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a

plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))). Plaintiff has failed to assert any justification or alternative basis for exercising jurisdiction over his remaining claims should the Court grant summary judgment against him on his federal claims. Therefore, while expressing no opinion on the merits of the state law claims, the Court dismisses these claims without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### III. Conclusion

For the foregoing reasons, the Court **DENIES** the motion for summary judgment (ECF No. 38) filed by Plaintiff and **GRANTS** the motion for summary judgment (ECF No. 41) filed by COWIC. This Court also **GRANTS** the motion for summary judgment (ECF No. 44) filed by Defendants Columbus, O'Neall, and Peters in regard to Plaintiff's federal claims, but declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which the Court **DISMISSES WITHOUT PREJUDICE**. The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

                                                  /s/ Gregory L. Frost  
                                      GREGORY L. FROST  
                                      UNITED STATES DISTRICT JUDGE